BURKHARDT v BAILEY

Docket No. 243354. Submitted February 3, 2004, at Grand Rapids. Decided
February 19, 2004, at 9:05 A.M. Leave to appeal sought.

Terrance Burkhardt brought an action in the Ogemaw Circuit Court
against Michael L. Bailey and Bond Corporation, seeking to quiet
title to real property. Bailey had owned the property, which was
secured by a mortgage held by Bond, but failed to pay property
taxes. Burkhardt purchased the property at a tax sale and obtained
a tax deed to the property. Burkhardt served Bailey with notice of
reconveyance, but Bailey took no steps to redeem the property
within six months after receiving the notice informing him of his
·right to redeem. Burkhardt did not provide notice to Bond, the
mortgagee of record. The court, Michael J. Baumgartner, J., granted
summary disposition in favor of both Bailey and Bond, and
declared the tax deed void, on the basis of the failure to provide
notice to Bond within the five-year period provided for such notice.
Burkhardt appealed. The Court of Appeals, CAVANAGH, P.J, and
MARKEY and COOPER, JJ., affirmed in part and reversed in part in an
unpublished opinion per curiam, issued September 21, 2001
(Docket No. 223706). The Court of Appeals held that the trial court
correctly granted summary disposition in favor of Bond, but erred
in granting summary disposition in favor of Bailey and in declaring
the tax deed void. The Court held that if Burkhardt fails to serve
the required notice on Bond within the statutory five-year period,
he will be barred from claiming title under the tax deed. During the
period that the appeal had been pending in the Court of Appeals,
Ralph Hamilton, Sr., and Lona Hamilton, who were aware of the
appeal, loaned Bailey funds to pay Bailey's mortgage from Bond. A
discharge of the mortgage executed by Bailey to Bond was
recorded on the same day that a mortgage executed by Bailey to
the Hamiltons was recorded. The trial court, on remand, vacated
the portions of its prior decision granting summary disposition to
Bailey and finding the tax deed void. The Hamiltons, almost two
years later, received from Bond an alleged assignment of its rights
and a quitclaim deed that stated it was for full consideration of
funds advanced by the Hamiltons to discharge Bailey's mortgage.
The trial court then granted the Hamiltons' motion to intervene.
The trial court then ruled that Bond's interest in the subject prop-

erty had been conveyed to and assumed by the Hamiltons as a result of the discharge of Bond's mortgage and the new mortgage by the Hamiltons. The trial court held that the Hamiltons, as the legal and equitable assignees of Bond, as mortgagees, were entitled to notice and the opportunity to redeem within the period permitted by statute. The trial court granted Bailey and the Hamiltons summary disposition and dismissed Burkhardt's complaint to quiet title. Burkhardt appealed.

The Court of Appeals *held*:

1. Bailey lost his right to redeem the property when he failed to do so within the statutory six-month period. Bailey has no standing to assert Burkhardt's failure to give notice to Bond.

2. The trial court properly concluded that if Bond had redeemed the property, Burkhardt's tax deed would be void, and Bailey's fee interest would be revived, subject to Bond's mortgage and Bond's redemption lien.

3. Only those persons or entities entitled to notice under MCL 211.140, or their successors in interest, who continue to hold an existing interest described in MCL 211.141 have the right to redeem. Therefore, Bond could no longer redeem the property after its mortgage was discharged, even though Bond's right to notice continued. Thus, Bond could not assign any right to redeem after it discharged its mortgage.

4. No legal basis exists to treat Bond's mortgage discharge and Bailey's mortgage to the Hamiltons as an assignment from Bond to the Hamiltons of Bond's rights under its mortgage. The trial court erred as a matter of law in ruling to the contrary.

5. The trial court erred in finding the Hamiltons the equitable assignees of Bond and entitled to a notice of reconveyance and the opportunity to redeem within the period permitted by statute.

Reversed and remanded for entry of a judgment for the plaintiff.

1. TAXATION — TAX SALES — REAL PROPERTY — NOTICE.

An individual who obtains an interest in real property through a tax sale, regarding taxes assessed before January 1, 1999, but not paid, must perfect his title by notifying all parties that have a recorded interest in the property, or that assert an ownership interest through open possession, that the property has been sold for unpaid taxes; the notice must advise that the property may be reconveyed upon payment of the redemption amount within six months after service of the notice; a tax purchaser's right to enforce a tax title against an individual or entity entitled to notice is forever barred if the tax title holder fails to make a bona fide

attempt to give the required notice within five years (MCL 211.60, 211.140[1], 211.131[1]).

2. TAXATION — TAX SALES — REDEMPTIONS — NOTICE.

When property that has been sold for delinquent taxes is redeemed, the tax deed becomes void, and not merely subject to the redeemer's interest; a party that redeems the property but that does not hold a fee interest retains only that party's prior interest along with a lien against the property for the redemption costs (MCL 211.141[2], [4]).

3. TAXATION — TAX SALES — MORTGAGES — NOTICE.

An individual who obtains an interest in real property through a tax sale, regarding taxes assessed before January 1, 1999, but not paid, must notify those who have recorded mortgages on the property as of the date notice is delivered to the sheriff for service on any person entitled to notice of the right to redeem under MCL 211.140(1); only those persons or entities entitled to notice under § 140, or their successors in interest, who continue to hold an existing interest described in MCL 211.141(1) have the right to redeem.

4. MORTGAGES — ASSIGNMENTS.

A mortgage cannot be assigned after it has been discharged.

5. ASSIGNMENTS — INTENT TO PRESENTLY TRANSFER.

A written instrument may create an assignment if it clearly reflects the intent of the assignor to presently transfer the thing to the assignee.

6. MORTGAGES — DISCHARGES.

A mortgage is discharged when a document stating that the mortgage is discharged is filed with the register of deeds (MCL 565.41).

7. RECORDS — PROPERTY.

Every document assigning, conveying, or disposing of an interest in real estate that is submitted for recording must provide a statement identifying the event it evidences and must purport to evidence only one event (MCL 565.210[1][f][ii], [3]).

8. ASSIGNMENTS — EQUITABLE ASSIGNMENTS.

An equitable assignment may arise where a legal instrument fails to create an assignment but the circumstances clearly establish the assignor's intent to presently transfer an interest.

9. EQUITY — CONFLICT OF LAWS — STATUTES.

Equity may not be used to avoid the dictates of a statute, absent fraud, accident, or mistake.

*Dreyer & Hovey* (by *David J. Dreyer*) for Terrance Burkhardt.

*Bishop & Heintz, P.C.* (by *Douglas S. Bishop* and *Steven R. Fox*), for Ralph Hamilton, Sr., and Lona Hamilton.

Before: MURRAY, P.J., and MURPHY and MARKEY, JJ.

MARKEY, J. Plaintiff, a tax purchaser of certain vacant property in Ogemaw County, appeals by right the trial court's order granting defendant Michael L. Bailey and intervening defendants Ralph Hamilton, Sr., and Lona Hamilton summary disposition under MCR 2.116(C)(10) on plaintiff's complaint to quiet title. The trial court also declared plaintiff's tax deed void and ordered the property redeemed and reconveyed to Bailey and the Hamiltons pursuant to the Hamiltons' tender of the statutory redemption amount.[1] We conclude that the trial court erred by applying principles of equity to overcome the plain language of the relevant document that discharged a mortgage held by defendant Bond Corporation, extinguishing its right of redemption. Therefore, we reverse and remand for entry of summary disposition for plaintiff.

## I. SUMMARY OF MATERIAL FACTS AND PROCEEDINGS

This is not the first time this case has been before this Court. In *Burkhart v Bailey*, unpublished opinion per curiam of the Court of Appeals, issued September

---

[1] MCL 211.141(2) provides, in part, "[r]edemption shall be made by paying to the treasurer of the county in which the property is situated, all sums paid as a condition of the [tax sale] purchase, together with an additional 50%."

21, 2001 (Docket No. 223706), we affirmed in part and reversed in part the trial court's grant of summary disposition to Bailey and Bond. We repeat some of the historical facts set forth in our first opinion.

> Bailey owned vacant property secured by a mortgage held by Bond Corporation. Bailey failed to pay property taxes and, in May 1997, Burkhardt purchased the property at a tax sale. On August 31, 1998, Burkhardt obtained a tax deed to the property. Burkhardt served Bailey with notice of reconveyance; however, Bailey took no steps to redeem the property within six months after receiving the notice. See MCL 211.73a; MCL 211.140(1).
>
> On July 7, 1999, Burkhardt filed a complaint seeking to quiet title to the property, seeking to reform the mortgage, or in the alternative to have the mortgage declared satisfied. Bailey did not answer the complaint, and was defaulted. Bond Corporation moved for summary disposition pursuant to MCR 2.116(C)(8) and (10), arguing that Burkhardt's failure to provide it with the required notice rendered the tax deed void. The trial court granted summary disposition in favor of both Bond Corporation and Bailey, and declared Burkhardt's tax deed void.

We noted that under MCL 211.73a[2] plaintiff would be barred from asserting title if he failed to make a bona fide effort to serve the required notice of the tax sale and the right of reconveyance upon payment of the applicable redemption amount.[3] We continued:

> After purchasing the property and obtaining a tax deed, Burkhardt served the required notice on Bailey but did not serve notice on Bond Corporation, notwithstanding the fact that the mortgagee named in an undischarged, recorded mortgage is entitled to notice. MCL 211.140(1)(d). At the

---

[2] MCL 211.73a was repealed effective December 31, 2003, by 1999 PA 123 (enacting § 4).

[3] See n 1.

time he filed the action to quiet title, approximately four years remained for Burkhardt to give the required notice to Bond Corporation. Burkhardt's action was in effect premature; however, he was not yet precluded from claiming ownership of the property under the tax deed because five years had not yet passed without notice being given to all parties entitled to receive notice.

Accordingly, this Court held that the trial court correctly granted Bond summary disposition but erred by declaring plaintiff's tax deed void. But added, "[i]f Burkhardt fails to serve the required notice on Bond Corporation within the specified five-year period, he will be barred from claiming title to the property under the tax deed." We also held that

the trial court erred by granting summary disposition in favor of Bailey. Bailey took no steps to redeem the property within six months of receiving the notice of redemption. He lost the opportunity to redeem the property when he did not act in a timely manner to do so, and was not entitled to rely on Bond Corporation's argument that it did not receive proper notice.

The trial court entered its first order in this matter on September 16, 1999. Later in 1999, while the appeal of that order was still pending,[4] the Hamiltons, through their daughter-in-law Shelley Hamilton, who owned a mortgage company, paid the mortgage debt Bailey owed to Bond. The Hamiltons were aware of the pending appeal; Bailey is Lona Hamilton's brother. Lona and Ralph Hamilton (the Hamiltons) aver they asked Shelley Hamilton to help them assume Bond's position and rights as mortgagee. Bailey also averred that he believed the Hamiltons intended to "take

---

[4] Docket No. 223706.

over" Bond's position as primary mortgagee. To accomplish this, the Hamiltons loaned Bailey $25,000, of which $10,000 was used to pay Bailey's debt to Bond. On December 2, 1999, Bailey granted the Hamiltons a $25,000 mortgage on the subject property. The Hamiltons never engaged in any direct negotiations with Bond. Likewise, Bailey averred he had no contact with Bond regarding the payoff of his debt.

In an affidavit, Shelley Hamilton testified that the Hamiltons "intended to assume Bond's position as first mortgagee," and she believed that she structured the transaction to accomplish that intent. But she also averred that she conducted the transactions with Bond by mail. She further averred that it "was not until after I had received the new mortgage from Bailey to Hamilton [sic], and disbursed the funds to Bond Corporation, that I forwarded the new mortgage and the executed *discharge* of Bond's mortgage, together, for recording." (Emphasis added.) The discharge of Bailey's mortgage to Bond was recorded on January 14, 2000, and provides:

DISCHARGE OF MORTGAGE

KNOWN ALL MEN BY THESE PRESENTS, That Bond Corporation, a Michigan Corporation, whose address is 2007 Eastern, S.E., Grand Rapids, Michigan 49507 does hereby certify, That a certain Mortgage dated July 24, 1992, made and executed by Michael L. Bailey and Patty J. Bailey of the first part, to Bond Corporation of the second part, and recorded in the office of the Ogemaw County Register of Deeds in Liber 383 Page 443-448 on August 3, 1992 is fully paid, satisfied and discharged.

Dated this 15th day of November, 1999.

On September 21, 2001, this Court affirmed in part and reversed in part the trial court's first order in favor of defendants. In the trial court, on remand, plaintiff presented a proposed order setting aside the summary disposition order, reinstating the tax deed, dismissing Bond without prejudice, and issuing a judgment of quiet title against Bailey. The Hamiltons moved to intervene and objected to plaintiff's proposed order. After a December 14, 2001, hearing, the trial court declined to adopt plaintiff's proposed order and instead merely vacated the portions of its prior decision granting summary disposition to Bailey and finding the tax deed void. The trial court ordered that all other aspects of the earlier decision remained in effect.

Meanwhile, Ralph Hamilton requested and received from Bond an assignment of its rights and a quitclaim deed. Hamilton averred that these documents did not create new rights, "but only reflected *my intent* relative to the transaction." (Emphasis added.) Bond's quitclaim deed, dated November 28, 2001, recites it is "[f]or full consideration of funds advanced by [the Hamiltons] to *discharge* [Bailey's] mortgage . . . ." (Emphasis added.)

Bond's "assignment" to the Hamiltons, also dated November 28, 2001, provides, in pertinent part:

> It is the intent of this document to assign and convey any and all interest of the Assignor, *if any*, in the described premises, including, but not limited to, any and all rights, if any, as Mortgagee, under or through a certain Mortgage dated July 24, 1992, made and executed by Michael L. Bailey and Patty J. Bailey to Bond Corporation . . . .
>
> This assignment and conveyance is made, expressly, *without warranty or representation on behalf of Bond Corporation as to the existence of any particular rights.*

This assignment is made by Bond Corporation, a Michigan corporation, upon the request of Ralph Hamilton, Sr. and Lona Hamilton, and upon a representation of said persons that the funds paid to Bond Corporation to discharge the above-referenced mortgage were advanced by Ralph Hamilton, Sr. and Lona Hamilton, *pursuant to their understanding that they were accepting and assuming its position as primary mortgagee for said premises.* [Emphasis added.]

In January 2002, the trial court granted the Hamiltons' motion to intervene. In March 2002, the Hamiltons tendered a reconveyance payment of $2,493.51 to the register of deeds, which the trial court ordered held by the county treasurer. Later, the Hamiltons moved for summary disposition under MCR 2.116(C)(10). At a hearing on the motion on July 11, 2002, the trial court found that Bond's interest in the subject property had been conveyed to or assumed by the Hamiltons who had advanced "purchase money" to pay Bailey's debt to Bond. The trial court reasoned that plaintiff had never given Bond notice of the right to reconveyance; therefore, Bond could have redeemed the property for the benefit of itself and all other holders of interests in the property, including Bailey. In essence, Bond or Bond's successors in interest, the Hamiltons, could redeem the property because plaintiff had not given Bond statutory notice and, upon redemption, Bailey's contingent interest would be revived. The trial court relied heavily on the fact that Bond's mortgage discharge and the new mortgage from Bailey to the Hamiltons were recorded on the same day. Thus, the trial court viewed the payoff to Bond and the new mortgage as one transaction. Further, the trial court concluded that although it would have been better if

the documents indicated Bond assigned its rights, to rule for plaintiff would give him a windfall and cut off the Hamiltons. The trial court believed that that result would be inequitable and elevate form over substance. Accordingly, the trial court granted Bailey and the Hamiltons summary disposition under MCR 2.116(C)(10).

The trial court entered its order on August 8, 2002, ruling that the Hamiltons, "as the legal and equitable assignees of Bond Corporation, as mortgagees, were and are entitled to a notice of reconveyance and the opportunity to redeem within the period permitted by statute." The Court further ordered that the county treasurer pay the redemption amount deposited by the Hamiltons to plaintiff upon compliance with all statutory requirements. The order also dismissed with prejudice plaintiff's complaint to quiet title.

Plaintiff moved for a stay pending appeal, but the trial court only granted an order staying payment of the redemption money to plaintiff. Plaintiff filed a notice of lis pendens to otherwise preserve his interest in the property.

We summarize the three issues plaintiff raises on appeal. First, has Bailey forever lost all interest in the property under the General Property Tax Act, MCL 211.1 *et seq.*, or could Bailey's interest in the property be revived if redeemed by a proper party. Second, was Bond's right to notice of reconveyance, and, therefore, Bond's right to redeem, extinguished when its discharge of mortgage was recorded. Third, did the Hamiltons succeed to Bond's right of redemption, and if not, could the trial court nevertheless grant the Hamiltons equitable relief.

II. ANALYSIS

A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to grant summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A party's claim to summary disposition based on MCR 2.116(C)(10) tests the factual sufficiency of the complaint and must be supported or opposed by affidavits, depositions, admissions, or other documentary evidence. *Id.*; *Maiden v Rozwood*, 461 Mich 109, 120-121; 597 NW2d 817 (1999). The trial court must consider the submitted evidence in the light most favorable to the nonmoving party. MCR 2.116(G)(5); *Ritchie-Gamester v City of Berkley*, 461 Mich 73, 76; 597 NW2d 517 (1999). Where the proffered evidence fails to establish that a disputed material issue of fact remains for trial, summary disposition is properly granted to the party so entitled as a matter of law. MCR 2.116(C)(10), (G)(4), and (I)(1), (2); *Maiden, supra*; *Auto-Owners Ins Co v Allied Adjusters & Appraisers, Inc*, 238 Mich App 394, 397; 605 NW2d 685 (1999).

Likewise, both the interpretation of a statute and a contract are questions of law this Court reviews de novo. *McKusick v Travelers Indemnity Co*, 246 Mich App 329, 332; 632 NW2d 525 (2001); *Ottaco, Inc v Kalport Dev Co, Inc*, 239 Mich App 88, 92; 607 NW2d 403 (1999). Moreover, this Court reviews equitable actions de novo, including actions to quiet title. *Little v Kin*, 249 Mich App 502, 507; 644 NW2d 375 (2002); *Killips v Mannisto*, 244 Mich App 256, 258; 624 NW2d 224 (2001). The trial court's findings of fact are reviewed for clear error, MCR 2.613(C), but the court

may not resolve factual disputes or determine credi-
bility in ruling on a summary disposition motion,
*Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d
475 (1994).

### B. BAILEY'S RIGHTS

The county may sell real property against which
taxes were assessed before January 1, 1999, but not
paid.[5] MCL 211.60. An individual who obtains an inter-
est in real property through a tax sale, however, must
perfect his title by notifying all parties that have a
recorded interest in the property or that assert an
ownership interest through open possession that the
property has been sold for unpaid taxes. MCL
211.140(1).[6] The notice must advise that the property
may be reconveyed upon payment to the county trea-
surer of the redemption amount[7] within six months
after return of service of the notice. *Id.* Because this
six-month period is the final redemption period, the
statutory notice requirements must be strictly com-
plied with because the tax sale proceedings serve to
divest owners of their property interests. *Equivest
Ltd Partnership v Foster*, 253 Mich App 450, 453-454;
656 NW2d 369 (2002); *Ottaco, supra* at 90-91. But the

---

[5] The Legislature has extensively amended the procedure to collect
taxes assessed after December 31, 1998, that are delinquent, replacing the
statutes here at issue with a system of forfeiture, foreclosure, and sale.
See 1999 PA 123. The statutes pertinent to this case have been repealed
effective December 31, 2003, or will be repealed effective December 31,
2006. *Id.* (enacting §§ 4 and 5); 2001 PA 94 (enacting § 1). The statutes
cited in this opinion refer to those in effect on August 31, 1998, when
plaintiff obtained his tax deed.

[6] MCL 211.140 was repealed effective December 31, 2003, by 2001 PA 94
(enacting § 1).

[7] See n 1.

six-month period does not begin to run until notice is given. *Equivest, supra* at 454; *Ottaco, supra* at 91. The tax purchaser's right to enforce a tax title against an individual or entity entitled to notice under § 140 is "forever barred" if the tax title holder fails to make a bona fide attempt to give the required notice within five years to that individual or entity. MCL 211.73a; *Halabu v Behnke,* 213 Mich App 598, 604; 541 NW2d 285 (1995).

As we held in our prior decision, Bailey lost his right to redeem the subject property when he failed to do so within the six-month period permitted by § 140 and § 141. See *Halabu, supra* at 606. Consequently, Bailey had no standing to assert plaintiff's failure give notice to Bond, the holder of a recorded mortgage at the time the required notice was delivered to the sheriff for service on Bailey. *Id.*; *Ottaco, supra* at 91 n 7. But because plaintiff had not served Bond with the required notice, Bond could still redeem the subject property. Sections 140, 141; *Equivest, supra* at 454. Even actual notice to Bond was insufficient to commence the running of the six-month period with regard to Bond because strict compliance with the statutory notice is required. *Id.* So, although Bailey could not assert Bond's right to redeem, Bond retained its own right to redeem.

In our prior decision, we did not address whether Bailey's rights in the subject property could be revived if Bond timely redeemed; therefore, the law of the case doctrine does not preclude our considering the question now. See, generally, *Grievance Administrator v Lopatin,* 462 Mich 235, 261-262; 612 NW2d 120 (2000), and *Ashker v Ford Motor Co,* 245 Mich App 9, 13; 627 NW2d 1 (2001). We conclude that

the statute provides the answer to this question. When property that has been sold for delinquent taxes is redeemed, the tax deed becomes void. It is not merely subject to the redeemed interest held by the individual or entity that has redeemed the property. Upon payment of the redemption amount to the county treasurer, "the tax title and all the certificates of sale shall become void and of no effect against the property to be redeemed." MCL 211.141(2). Moreover, a party that redeems the property but who does not hold a fee interest retains only that party's prior interest along with a lien against the property or parts of the property or interests in it not owned by the redeeming party for the cost of redemption or the portion of that amount that is lawfully chargeable to the other interests. MCL 211.141(4). Accordingly, the trial court properly concluded that if Bond had redeemed the subject property, plaintiff's tax deed would be void, and Bailey's fee interest would be revived, subject to Bond's mortgage and Bond's redemption lien.

### C. THE HAMILTONS' LEGAL RIGHTS

Next, we consider the trial court's ruling that the Hamiltons were the "legal . . . assignees of Bond Corporation . . . entitled to a notice of reconveyance and the opportunity to redeem within the period permitted by statute." We conclude that on this issue the trial court erred as a matter of law.

The first question is whether Bond's valid discharge of mortgage during the five-year period in which plaintiff had to perfect his tax title extinguished Bond's right to notice and its right to redeem the subject property. The parties do not dispute that before

any discharge Bond was entitled to notice and redemption under MCL 211.140(1)(d) and MCL 211.141(1)(c) as an undischarged recorded mortgagee. The issue is whether that right continued after the mortgage was discharged. MCL 211.140(1) provides that the tax purchaser must notify those who were mortgagees "as of the date the notice was delivered to the sheriff for service . . . ." Applying the plain meaning of the statute, the right to *notice* depends on the entity's status at the time notice was delivered to the sheriff for service on any person entitled to notice under subsection 140(1). In this case, the time fixing the right to notice occurred when plaintiff delivered notice to the sheriff for service on Bailey. See *Ottaco, supra* at 91 n 7, 93.

On the other hand, under MCL 211.141(1), the right to *redeem* is not based on the time of notice; it is based on the time of redemption. Subsection 141(1) lists the parties entitled to receive from the tax title claimant a release and quitclaim upon payment of the redemption amount within six months after the return of service is filed or the proof of publication of the notice is filed as prescribed in § 140. The list includes:

(a) A person with an estate in the property.

(b) A person with an interest in the property, either in fee, for life, or for years.

(c) A mortgagee of the property.

(d) An assignee of an undischarged mortgage on the property.

(e) A person who holds a lien on the property.

(f) An executor, administrator, trustee, or guardian of a person set forth in subdivisions (a) through (e). [MCL 211.141(1).]

By its plain wording § 141 only extends the right to redeem to persons or entities having existing specified interests in the subject property. But if the list in subsection 141(1) is read literally, persons having interests in the property, which interests arise after the time fixing the right to notice under § 140 may also have a right to redeem. This ambiguity permits judicial construction of § 141. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). The primary task of judicial construction of statutes is to discern and give effect to the intent of the Legislature. *Id.* This Court must determine the reasonable construction that best effects the intent of the Legislature. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998); *Draprop Corp v Ann Arbor*, 247 Mich App 410, 415; 636 NW2d 787 (2001). Moreover, statutes that relate to the same subject or share a common purpose are in pari materia and must be read together as one law, *State Treasurer v Schuster*, 456 Mich 408, 417; 572 NW2d 628 (1998), and parts of the same statute must be construed as a harmonious whole to effectuate the intent of the Legislature, *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 159; 627 NW2d 247 (2001).

Both § 140 and § 141 are part of the General Property Tax Act, MCL 211.1 *et seq.*, and address the right to redeem property sold for delinquent taxes. Also, subsection 141(1) specifically refers to the six-month period "after the return of service . . . is filed as prescribed in section 140 . . . ." Accordingly, § 140 and § 141 are in pari materia and must be construed together to ascertain the intent of the Legislature. We conclude that only those persons or entities entitled to notice under § 140, or their successors in interest,

who *continue* to hold an existing interest described in § 141, have the right to redeem. We reach this conclusion because it is the most reasonable way to construe MCL 211.141(1) when read with MCL 211.140. Under this construction, Bond could no longer *redeem* the property after its mortgage was discharged, even though Bond's right to *notice* continued under the strict compliance doctrine. *Equivest, supra* at 453-454. Thus, Bond could not assign any right to redeem unless it also properly *assigned* its mortgage on the property.

As already discussed, because Bailey forfeited his right to redeem the property, he could not rely on plaintiff's failure to notify Bond to revive his own interest. *Halabu, supra* at 602, 605-606. The only remaining parties are the Hamiltons. If Bond discharged its mortgage, and Bailey gave the Hamiltons a new mortgage, the Hamiltons were not entitled to *notice* because the mortgage was not recorded when plaintiff sent Bailey his notice. MCL 211.140(1); *Ottaco, supra* 91 n 7. For the same reasons, if the Hamiltons received only a new mortgage from Bailey, they would not have a right to *redeem* under MCL 211.141(1). Bailey could not convey or create rights to the subject property that he had already forfeited. In sum, if the Hamiltons acquired the right to redeem the subject property they did so only through an assignment by Bond to them of Bond's mortgage. MCL 211.141(1)(d).

Under general contract law, rights can be assigned unless the assignment is clearly restricted. Calamari & Perillo, Contracts (3d ed), § 18-10, p 735. An assignee stands in the position of the assignor, possessing the same rights and being subject to the same

defenses. *Nichols v Lee*, 10 Mich 526, 528-529 (1862). See, also, *Professional Rehabilitation Assoc v State Farm Mut Automobile Ins Co*, 228 Mich App 167, 177; 577 NW2d 909 (1998), and *First of America Bank v Thompson*, 217 Mich App 581, 587; 552 NW2d 516 (1996). Because a mortgage assignee has the same rights as the assignor, and because MCL 211.141(1)(d) accords the "assignee of an undischarged mortgage on the property" the right to redeem the property, if Bond properly assigned its mortgage to the Hamiltons, they had a right to redeem and could rely on the failure to provide Bond notice.

The trial court relied on two late-1999 documents to find that Bond had assigned its mortgage to the Hamiltons. On its face, one document was plainly a discharge by Bond of the recorded, undischarged mortgage it held at the time notice was delivered for service on Bailey.[8] The other document was a mortgage Bailey granted to the Hamiltons. These documents were subsequently recorded. Two years later, Bond purported to assign to the Hamiltons its rights under the mortgage it had discharged. But a mortgage cannot be assigned after it has been discharged. *Plasger v Leonard*, 312 Mich 561, 564; 20 NW2d 296 (1945). "After a debt is discharged, an assignment of a mortgage without the debt is a mere nullity." *Id.*, citing *Ladue v Detroit & M R Co*, 13 Mich 380, 396 (1865). This is so because a mortgage is merely a "chose in action"—a secondary incident to the debt to

---

[8] It is undisputed that plaintiff obtained his tax deed on August 31, 1998, and recorded it on October 14, 1998. It is further undisputed that plaintiff delivered the notice required by MCL 211.140(2) to the sheriff for service on Bailey on June 16, 1998, and Bailey was served on June 19, 1998. Plaintiff recorded his notice of claim under tax deed and proof of service on Bailey on January 14, 1999.

secure its payment through a lien on specific property. *Leonard, supra; Ladue, supra* at 394-395. Therefore, the next issue is whether Bond's discharge of mortgage recorded simultaneously with the mortgage from Bailey to the Hamilton's could create an assignment of Bond's mortgage to the Hamiltons.

There is little case law in this state regarding what elements are necessary to create an assignment. In *Weston v Dowty*, 163 Mich App 238, 242; 414 NW2d 165 (1987), this Court opined "there must be a perfected transaction between the parties which is intended to vest in the assignee a present right in the thing assigned." Further, Michigan's version of the statute of frauds requires that an assignment of "things in action"[9] be "in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise . . . ." MCL 566.132(1)(f). Thus, under Michigan law, a written instrument, even if poorly drafted, creates an assignment if it clearly reflects the intent of the assignor to presently transfer "the thing" to the assignee. *Hovey v Grand Trunk W R Co*, 135 Mich 147, 149; 97 NW 398 (1903).

Foreign jurisdictions have also held generally that an assignment requires an assignor's intent to presently assign be clearly manifested. "No 'particular

---

[9] A "chose in action" is a " 'right to personal things of which the owner has not the possession, but merely a right of action for their possession.' " *City of Holland v Fillmore Twp*, 363 Mich 38, 43; 108 NW2d 840 (1961), quoting Black's Law Dictionary (4th ed), p 305. A "thing in action" is synonymous with a "chose in action." See *Powers v Fisher*, 279 Mich 442, 448-449; 272 NW 737 (1937). See also Ballentine's Law Dictionary (3d ed), defining "chose in action" as "the right of a creditor to be paid; a right not reduced to possession but recoverable by bringing and maintaining an action," and "thing in action" as the "same as chose in action."

form of words is required for an assignment, but the assignor must manifest an intent to transfer and must not retain any control or any power of revocation.' " *Travertine Corp v Lexington-Silverwood*, 670 NW2d 444, 447 (Minn App, 2003), quoting *Minnesota Mut Life Ins Co v Anderson*, 504 NW2d 284, 286 (Minn App, 1993). See, also, *E & L Rental Equip, Inc v Gifford*, 744 NE2d 1007, 1011 (Ind App, 2001), quoting *Brown v Indiana Nat'l Bank*, 476 NE2d 888, 894 (Ind App, 1985): " 'In determining whether an assignment has been made, the question is one of intent. A written agreement assigning a subject matter must manifest the assignor's intent to transfer the subject matter clearly and unconditionally to the assignee.' " (Citations omitted.)

The Hamiltons rely heavily on *their* intent, relative Shelley Hamilton's intent, and Bailey's intent, to argue that the parties clearly intended that the documents at issue would permit the Hamiltons to assume Bond's position as mortgagee. This argument has several flaws. First, the only parties that could create a document assigning Bond's mortgage to the Hamiltons are Bond and the Hamiltons. Bailey could not create an assignment from Bond to the Hamiltons. Second, a fundamental tenet of all contracts is the existence of mutual assent or a meeting of the minds on all essential terms of a contract. *Quality Products & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 364; 666 NW2d 251 (2003); *Kamalnath v Mercy Mem Hosp Corp*, 194 Mich App 543, 548-549; 487 NW2d 499 (1992). Moreover, with respect to an assignment, the assignor must

clearly manifest a present transfer.[10] Here, the assignor would have to be Bond. Bond did not clearly manifest a present transfer. Bond had long since discharged its mortgage. *Hovey, supra; Brown, supra.* Last, the Hamiltons' logic is flawed because the unilateral subjective intent of one party cannot control the terms of a contract. " 'It is beyond doubt that the actual mental processes of the contracting parties are wholly irrelevant to the construction of contractual terms. Rather, the law presumes that the parties understand the import of a written contract and had the intention manifested by its terms.' " *Zurcher v Herveat,* 238 Mich App 267, 299; 605 NW2d 329 (1999), quoting *Zurich Ins Co v CCR & Co (On Rehearing),* 226 Mich App 599, 604; 576 NW2d 392 (1997) (O'CONNELL, J.). See, also, *Wilkie v Auto-Owners Ins Co,* 469 Mich 41, 51; 664 NW2d 776 (2003).

The main goal of contract interpretation generally is to enforce the parties' intent. *Mahnick v Bell Co,* 256 Mich App 154, 158-159; 662 NW2d 830 (2003). But when the language of a document is clear and unambiguous, interpretation is limited to the actual words used, *Universal Underwriters Ins Co v Kneeland,* 464 Mich 491, 496; 628 NW2d 491 (2001), and parol evidence is inadmissible to prove a different intent, *Meagher v Wayne State Univ,* 222 Mich App 700, 722; 565 NW2d 401 (1997). An unambiguous contract must be enforced according to its terms. *Mahnick, supra* at 159. The judiciary may not rewrite contracts on the

---

[10] The Hamiltons offer no evidence that Bond intended its discharge to transfer its mortgage to them. The subsequent assignment and quitclaim deed executed in 2001 based on the self-serving averments of the Hamiltons were carefully worded to disclaim any representation by Bond that its earlier discharge was actually an assignment.

basis of discerned "reasonable expectations" of the parties because to do so "is contrary to the bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy." *Wilkie, supra* at 51.

Here, nothing in the discharge or mortgage documents indicates that the documents are anything but what they purport to be. For the reasons already discussed, Bailey's mortgage to the Hamiltons cannot effectuate an assignment to the Hamiltons of Bond's mortgage. Accordingly, the mere fact that Bailey's mortgage to the Hamiltons and Bond's discharge were recorded on the same day cannot create an ambiguity in the plain language of the discharge. The trial court therefore erred by considering parol evidence to find the discharge to be something other than what it plainly purported to be. *Meagher, supra.*

Although no statute specifically addresses whether a document labeled a discharge can act as an assignment, several shed light on the issue. When a document stating that a mortgage is discharged is filed with the register of deeds, the mortgage is discharged. MCL 565.41. Every document assigning, conveying, or disposing of an interest in real estate that is submitted for recording must provide a statement identifying the event it evidences, MCL 565.201(1)(f)(ii), and must purport to evidence only one event, MCL 565.201(3). These statutes support the conclusion that the recorded discharge cannot be evidence of an event different from that stated on the document.

In sum, no legal basis exists to treat the Bond's mortgage discharge and Bailey's mortgage to the Hamiltons as an assignment from Bond to the Hamiltons. The trial court erred as a matter of law by ruling to the contrary.

### D. THE HAMILTONS' EQUITABLE RIGHTS

Finally, we consider the trial court's ruling that the Hamiltons were the "equitable assignees of Bond Corporation . . . entitled to a notice of reconveyance and the opportunity to redeem within the period permitted by statute." We again conclude that the trial court erred.

An "equitable assignment" is defined to include an "order, writing, or act by the assignor that makes an absolute appropriation of a chose in action or fund to the use of the assignee with the intent of transferring a present interest, but does not amount to a legal assignment." 6 Am Jur 2d, Assignments, § 5, p 155. So, where a legal instrument fails to create an assignment but the circumstances clearly establish the assignor's intent to presently transfer an interest, an equitable assignment may arise. As we discussed in part II (C) of this opinion, the Hamiltons relied on their own subjective intent but presented no clear evidence that Bond intended its discharge to be anything other than the discharge it purports to be. Moreover, the quitclaim deed that Bond subsequently issued recites it is "[f]or full consideration of funds advanced by [the Hamiltons] to *discharge* [Bailey's] mortgage." (Emphasis added.) And the "assignment" that Bond gave to the Hamiltons in November 2001 disclaims any warranty that it conveyed any rights. Rather, the

"assignment" recites it was issued solely on the basis of representations made by the Hamiltons.

Although the Hamiltons' representations of their understanding of the legal import of the transactions in 1999 were not disputed, a misunderstanding of the law is generally not sufficient ground for equitable relief. *Sentry Ins v ClaimsCo Int'l, Inc*, 239 Mich App 443, 447; 608 NW2d 519 (2000). Further, this Court and our Supreme Court have held that equity cannot be used to avoid the dictates of a statute, absent fraud, accident, or mistake. See *Stokes v Millen Roofing Co*, 466 Mich 660, 671-672; 649 NW2d 371 (2002), and *Freeman v Wozniak*, 241 Mich App 633, 637-638; 617 NW2d 46 (2000).

The Hamiltons rely on the concept of equitable mortgages discussed in *Schram v Burt*, 111 F2d 557, 561-562 (CA 6, 1940). Although *Schram* involved curing a defect in a mortgage, equitable mortgages are generally found when what appears to be an absolute conveyance on its face was actually intended as a mortgage. See *Townsend v Chase Manhattan Mtg Corp*, 254 Mich App 133, 138; 657 NW2d 741 (2002). An equitable mortgage places the substance of the parties' intent over form. See, e.g., *Hess v Haas*, 230 Mich 646, 651-652; 203 NW 471 (1925). But as we have already noted, this case is clearly different because the record contains no evidence that Bond intended to assign, rather then discharge, its mortgage. Here, the trial court applied equity not to enforce the assignor's intent, but to save the purported assignees from their own legal mistake. Further, the trial court invoked its equitable authority to the detriment of a party not involved in the faulty transaction.

We find it important that the one party the trial court seeks to protect, Bailey, had numerous opportu-

nities to redeem this property but did not do so. See *Ottaco, supra* at 90-91, for a description of the notice and redemption periods. This extensive notice procedure sufficiently protects the constitutional rights of property owners. *Smith v Cliffs on the Bay Condo Ass'n,* 463 Mich 420, 428-429; 617 NW2d 536 (2000). Although the Hamiltons did not have the opportunity to redeem, they were aware of the existing legal situation when they agreed to loan money to Bailey in part to pay Bond's mortgage. We do not doubt that the Hamiltons wanted to step into Bond's legal shoes, but the transactions here did not accomplish that goal. Equity is not intended to aid persons who either make poor business decisions or undertake legal transactions without the assistance of counsel.

Moreover, contrary to the trial court's reasoning, the Hamiltons will not necessarily lose $25,000. The Hamiltons aver in their affidavits that their loan to Bailey is a legal obligation they fully intend to enforce. They still may do so, albeit not by seeking to foreclose on the property here at issue. If Bailey fails to repay the Hamiltons as agreed, the Hamiltons may reduce the debt to a judgment and pursue any remedy available to judgment creditors. We conclude that the trial court stretched its equity powers beyond a permissible point.

### III. CONCLUSION

The trial court erred by granting defendant Bailey and intervening defendants summary disposition because, by clear language, Bond discharged its mortgage, and there is no evidence that Bond intended to assign instead of discharge its mortgage. We agree that the trial court correctly concluded that no mate-

rial fact was in dispute, but we find that upon those undisputed facts plaintiff was entitled to judgment as a matter of law. MCR 2.116(I)(2); *Auto-Owners Ins*, *supra* at 397. Consequently, the trial court erred by not granting plaintiff summary disposition. MCR 2.116(I)(2).

We reverse and remand for entry of judgment for plaintiff. We do not retain jurisdiction.