*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PAMELA D. AUSTIN and AUSTIN ASSOCIATES, LLC,

        Plaintiffs-Appellants,

v

TRACK SIDE STORAGE, LLC, and SARAH LIGHTNER,

        Defendants-Appellees.

UNPUBLISHED
March 21, 2024

No. 364213
Eaton Circuit Court
LC No. 21-001090-CK

Before: PATEL, P.J., and RICK and FEENEY, JJ.

PER CURIAM.

In this breach of contract and negligence action, plaintiffs appeal as of right the trial court's order granting defendants summary disposition pursuant to MCR 2.116(C)(10). We affirm.

## I. BACKGROUND

On September 2, 2003, plaintiff Austin Associates, LLC entered into a lease agreement with defendant Track Side Storage, LLC's (TSSL) predecessor, Trackside Self-Storage (TSS), for the rental of a single storage unit on a month-to-month basis. The lease outlined the term, rental fee, security deposit, consequences in the event that rent is not timely paid, non-permitted uses of the premises, rules and regulations applicable to the tenants, and included a limit of liability provision:

> 5. NO RESPONSIBILITY: I understand that TRACKSIDE SELF-STORAGE is only renting space to me, and does not accept my belongings as a warehouseman or bailee. I agree that nothing the Lessor does will be construed as issuing a warehouse receipt, bill of lading, or other document of title. I understand TRACKSIDE SELF-STORAGE does not provide insurance on my goods. I understand that TRACKSIDE SELF-STORAGE is not responsible for damage to my property, including theft. I UNDERSTAND THAT I MAY BUY INSURANCE ON MY PROPERTY AND I HAVE BEEN ADVISED TO DO SO.

The rules and regulations, which were incorporated into the lease, affirmed "TENANTS STORE GOODS AT THEIR OWN RISK[,]" and included a provision acknowledging the limit of liability outlined in the lease:

> 14. I understand that this self-storage facility and/or its management:
>
>     a. Is not responsible for loss or damage to my property
>     b. Does not provide insurance for my property
>     c. Requires that I provide my own insurance coverage or be self insured (personally responsible for any loss)
>     d. Is a commercial business renting space and is <u>NOT</u> a bailee or warehouseman

Plaintiff Pamela Austin signed the lease agreement and the rules and regulations on behalf of plaintiff Austin Associates, LLC.

At the time that the lease agreement was signed, TSS was a minimally secured open-air storage facility that was enclosed by a chain link fence and illuminated by overhead lighting. Renters were required to provide their own locks for their storage units. The owner of TSS lived on the premises and allegedly locked the storage facility's gate each night. In 2004, defendant TSSL purchased the storage facility from TSS.[1] TSSL's sole employee, defendant Sarah Lightner,[2] handled the day-to-day operations. With the purchase of the facility, TSS provided TSSL with files containing the business's existing contracts and records, including plaintiffs' 2003 lease agreement with TSS.

After TSSL purchased the facility, it did not require plaintiffs to sign a new lease agreement for the rental of unit 45. Thereafter, plaintiffs rented three additional storage units from TSSL. TSSL did not require plaintiffs to sign lease agreements for the three units; rather, the units were added to plaintiffs' existing account. TSSL maintains that it continued operating under the terms of the 2003 lease agreement until November 2020.

Other than the installation of new shingled roofs, TSSL did not make security updates or upgrades to the facility while they owned and operated it. The record reflects that TSSL maintained a functional front gate on the facility; however, the gate's lock disappeared early on in TSSL's ownership. Power was cut to the facility's overhead lighting sometime prior to 2020 and the facility was only illuminated by roadside street lights at night. Sarah Lightner performed monthly checks of the facility and typically visited the facility each week for general upkeep.

Between November 6, 2020 and November 20, 2020, plaintiffs' storage units were broken into. Plaintiff Austin inspected the storage units and discovered that plaintiffs' property was gone. Plaintiffs allege that the items had a value in excess of $110,000. Austin also discovered that plaintiffs' lock was missing from one of the units and TSSL had placed its own lock on the unit.

---

[1] James Lightner testified that he and his wife established TSSL for the acquisition and operation of the subject storage facility.

[2] Sarah is James Lightner's daughter-in-law.

Additional thefts had occurred earlier in the year, but defendants did not inform plaintiffs and attributed the thefts to desperation as a result of the COVID-19 pandemic.

In November 2021, plaintiff Austin filed a complaint against TSSL alleging that TSSL "breached its contractual obligations to plaintiffs to provide a facility that met the reasonable expectations of plaintiff for a secure storage entity[,]" which resulted in the theft of plaintiffs' property. Plaintiff alleged that "[t]he rental agreements between plaintiff and defendant never were memorialized in writing." After TSSL produced a copy of the 2003 lease agreement during discovery, plaintiffs filed an amended complaint adding Austin Associates, LLC as a plaintiff, Sarah Lighter as a defendant, and a claim of negligence against both defendants. Plaintiffs alleged that there was no written contract between the parties, but contended that defendants had represented that they would maintain certain security features throughout the facility. Plaintiffs alleged that TSSL "breached its contractual obligations to plaintiffs to provide a facility that met the reasonable expectations of plaintiff for a secure storage entity." The complaint also alleged that defendants were negligent in failing to provide certain security features, to timely report the break-ins to the authorities, to inform plaintiffs of the break-ins, and/or timely discover the break-ins.

After discovery, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(10) primarily arguing that the 2003 waiver of liability controlled. The trial court granted the motion, holding that the 2003 lease agreement and waiver governed the parties' relationship because plaintiffs continued to rent from defendants for 17 years under the terms of the written lease agreement. This appeal followed.

## II. STANDARDS OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). When reviewing a motion for summary disposition under MCR 2.116(C)(10), we must consider the evidence submitted by the parties in the light most favorable to the non-moving party. *Id*. at 160.[3] "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (cleaned up). "[T]he nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016) (citations omitted), quoting *Quinto v Cross and Peters Co*, 451 Mich 359, 362-363; 547 NW2d 314 (1996).

"The existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

---

[3] Plaintiffs erroneously assert that the trial court granted summary disposition pursuant to MCR 2.116(C)(8) and, consequently, cite incorrect standard of review.

III. ANALYSIS

Plaintiffs argue that the trial court erred by concluding that the 2003 lease agreement and the included waiver of liability governed the parties' transactions.[4] We agree, but we affirm because the right result was reached, i.e., granting summary disposition to defendants, because there is no evidence of a contract between the parties requiring defendants to maintain certain security features. See *Pro-Staffers, Inc v Premier Mfg Support Servs*, 252 Mich App 318, 322; 651 NW2d 811 (2002).

A party claiming breach of contract must prove by a preponderance of the evidence that (1) there was a contract, (2) the other party breached the contract, and (3) damages resulted to the party claiming a breach. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). A valid contract must satisfy the following elements: "(1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015). "A fundamental tenet of all contracts is the existence of mutual assent or a meeting of the minds on all essential terms of a contract." *Burkhardt v Bailey*, 260 Mich App 636, 655; 680 NW2d 453 (2004). "In interpreting a contract, it is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning." *Phillips v Homer*, 480 Mich 19, 24; 745 NW2d 754 (2008) (cleaned up). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Id*.

In this case, TSSL asserted, and the trial court agreed, that the 2003 lease agreement and waiver governed the parties' relationship. It is undisputed that the 2003 lease agreement was not signed by any employee or representative of TSSL. It is further undisputed that the 2003 lease agreement explicitly states that it was for the rental of unit 45, only. It is also undisputed that, after TSSL purchased the facility, it did not require plaintiffs to sign a new lease agreement for the rental of unit 45. And when plaintiffs rented the three additional storage units from TSSL, plaintiffs did not sign any lease agreements for these three units. It is further undisputed that the 2003 lease agreement was a month-to-month lease for an indefinite period until plaintiffs chose to terminate the lease with proper notice. And it is undisputed that, after TSSL purchased the facility, plaintiffs paid TSSL monthly rent for their storage units. But there is no evidence that TSS assigned all of its right, title, and interest in the 2003 lease agreement to TSSL when TSSL purchased the storage facility.

"Under general contract law, rights can be assigned unless the assignment is clearly restricted." *Burkhardt*, 260 Mich App at 653. "An assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses." *Id*. A valid assignment requires "a perfected transaction between the parties which is intended to vest in the assignee a

---

[4] We reject defendants' assertion that plaintiffs waived this issue by failing to raise it in the trial court. Plaintiffs asserted, in opposition to defendants' motion for summary disposition, that defendants could not enforce the waiver provision in the 2003 lease agreement between plaintiffs and defendants' predecessor in interest because defendants were not a party to the 2003 lease agreement.

present right in the thing assigned." *Id*. at 654 (cleaned up). "[U]nder Michigan law, a written instrument, even if poorly drafted, creates an assignment if it clearly reflects the intent of the assignor to presently transfer 'the thing' to the assignee." *Id*. at 654-655. "Moreover, with respect to an assignment, the assignor must clearly manifest a present transfer." *Id*. at 656. Because TSSL was not a party to the 2003 lease agreement and defendants failed to offer any evidence to establish a valid assignment of TSS's rights under the 2003 lease agreement to TSSL, we find that the trial court erred by concluding that the 2003 lease agreement and the included waiver of liability controlled.

However, we affirm the trial court's grant of summary disposition to defendants because plaintiffs failed to present any evidence to establish a modified contract between the parties. In response to defendants' motion, plaintiffs did not dispute that they had entered into the 2003 lease agreement with TSS. But plaintiffs argued that they never signed "a written memorialized contract" with TSSL. Plaintiffs asserted that they "only rented from the defendants because of defendants' promise to maintain certain security features." In support of this assertion, plaintiffs relied on plaintiff Austin's own self-serving affidavit wherein she averred, in pertinent part:

10. Never did Track Side Storage, LLC request, nor did I ever sign a written memorialized contract with Track Side Storage, LLC for the rental of storage Unit 45, or any other storage unit at the storage facility at 4274 East Vermontville Highway.

11. I remained a tenant at 4274 East Vermontville Highway after the acquisition of the premises by the Lightners because the Lightners kept in place most of the security features of Banner d/b/a Trackside Self-Storage - (lights, locks, functioning gate).

12. The one security feature that the Lightners did not have that made it different than Trackside Self-Storage was the absence of an owner living on site.

13. I did not sign, nor would I ever have signed a waiver of liability form for the Lightners, or for Track Side Storage, LLC, without a physical presence on site (as existed with Trackside Self-Storage through the presence of Banner).

14. I did agree to rent storage unit 45 from Track Side Storage, LLC, and thereafter storage units 17, 80 and 4.

15. My willingness to rent these units all stemmed from the fact that Track Side Storage, LLC maintained adequate lighting, a functioning gate, and a functioning lock on the front gate.

16. My willingness to rent these units all stemmed from conversations I had with Sarah Lighnter [sic] wherein Sarah Lightner promised to maintain adequate lighting, a functioning gate, and a functioning lock on the front gate at 4274 East Vermontville Highway, Potterville, Michigan.

There must be "mutual assent or a meeting of the minds on all essential terms of a contract." *Burkhardt*, 260 Mich App at 655. "A meeting of the minds is judged by an objective standard,

looking to the express words of the parties and their visible acts, not their subjective states of mind." *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 454; 733 NW2d 766 (2006) (cleaned up). After TSSL acquired ownership of the storage facility, plaintiffs did not sign a new lease agreement but continued to pay monthly rent for unit 45. And when plaintiffs rented three additional storage units from TSSL, they did not sign any lease agreements but paid monthly rent for those units. TSSL maintains that the three additional units were added to plaintiffs' account and it continued operating under the terms of the 2003 lease agreement until November 2020. The 2003 lease agreement between TSS and plaintiff does not mention security features or any promises to maintain certain security features. But plaintiffs allege that defendants orally promised to maintain certain security features, which would have been a modification of the existing month-to-month lease agreement.

Contracts may be modified orally or in writing. *Chatham Super Markets, Inc v Ajax Asphalt Paving, Inc*, 370 Mich 334, 339; 121 NW2d 836 (1963). But there must be mutual consent to the modification. *Adell Broadcasting Corp v Apex Media Sales, Inc*, 269 Mich App 6, 11; 708 NW2d 778 (2005). "The mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to waive the terms of the original contract." *Quality Products & Concepts Co v Nagel Precision, Inc.*, 469 Mich. 362, 373, 666 N.W.2d 251 (2003). Plaintiffs' mere allegation that "conversations" occurred with a TSSL employee is insufficient to establish the existence of a material factual dispute whether such "promises" were made and there was a meeting of the minds to modify the existing month-to-month lease agreement.

Moreover, plaintiffs' allegation that defendants promised to maintain certain security features in exchange for plaintiffs' "willingness" to rent additional units does not establish adequate consideration. "An essential element of a contract is legal consideration." *Yerkovich v AAA*, 461 Mich 732, 740; 610 NW2d 542 (2000). "In order for consideration to exist, there must be a bargained-for exchange—a benefit on one side, or a detriment suffered, or service done on the other." *Bank of America NA v First American Title Ins Co*, 499 Mich 74, 101; 878 NW2d 816 (2016). "Valid consideration for a contract cannot be presumed merely because two parties receive benefit from each other." *Higgins v Monroe Evening News*, 404 Mich 1, 20; 272 NW2d 537 (1978) (MOODY, J., plurality opinion). "The essence of consideration . . . is legal detriment that has been bargained for and exchanged for the promise. The two parties must have agreed and intended that the benefits each derived be the consideration for a contract." *Id*. at 20-21 (citation omitted). Because plaintiffs failed to establish a genuine issue of material fact regarding the existence of an oral contract between the parties that required defendants to maintain certain security features, we find that the trial court did not err by granting defendants' motion for summary disposition related to plaintiffs' contract claim. See *Pro-Staffers*, 252 Mich App at 322 (affirming grant of summary disposition on other grounds because the right result was reached by granting summary disposition).

Plaintiffs also failed to demonstrate a genuine issue of material fact regarding their negligence claim. To succeed on a negligence claim, a plaintiff must demonstrate that "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Hill v Sears, Roebuck and Co*, 492 Mich 651, 660; 822 NW2d 190 (2012) (cleaned up). "It is axiomatic that there can be no tort liability unless [a] defendant[ ] owed a duty to [a]

plaintiff." *Id*. (cleaned up). Duty may arise from a statute, a contractual relationship, or by application of the common law. *Id.* at 660-661.

Defendants asserted in their motion for summary disposition that the thefts were the result of third parties, not from any alleged breach of duty by defendants, and thus plaintiffs' negligence claim should be dismissed. In response, plaintiffs asserted "defendants (and specifically Sarah Lightner) acted tortiously in their omissions and unreasonable acts (including neither timely reporting break-ins at the facility [n]or timely informing plaintiff of the break-ins at the facility so plaintiff could remove items)." Plaintiffs alleged that defendant Lightner "owed a duty to Austin to have informed Austin *prior to the Austin thefts* about the other break-ins (so as to give Austin an opportunity to move her items out of the facility)." But plaintiffs failed to provide any legal or factual support for their position that defendants owed plaintiff Austin a duty to inform her of thefts at the facility. On appeal, plaintiffs merely assert in their statement of facts that defendant Lightner "owed a duty to Austin to have informed Austin *prior to the Austin thefts* about the other break-ins (so as to give Austin an opportunity to move her items out of the facility)." Once again, plaintiffs fail to provide legal or factual support for their position. In fact, plaintiffs do not even address the elements of their negligence claim in their brief on appeal or argue that there is a genuine issue of material fact whether defendants are liable for negligence. Accordingly, plaintiffs have abandoned any argument that there is a genuine issue of material fact whether defendants are liable for negligence. See *MOSES, Inc v SEMCOG*, 270 Mich App 401, 417; 716 NW2d 278 (2006) ("If a party fails to adequately brief a position, or support a claim with authority, it is abandoned.").

Affirmed.

/s/ Sima G. Patel
/s/ Michelle M. Rick
/s/ Kathleen A. Feeney

-7-