# STATE OF MICHIGAN

# COURT OF APPEALS

RACHEL SHULTZ and ASHLEY SHULTZ,

        Plaintiff-Appellants,

and

EZ REST REHAB CENTER INC,

        Intervening-Plaintiff,

v

PIONEER STATE MUTUAL INSURANCE
COMPANY,

        Defendant-Appellee.

UNPUBLISHED
June 26, 2018

No. 338146
Oakland Circuit Court
LC No. 2015-148725-NF

Before: BECKERING, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

Plaintiff, Rachel Shultz, appeals by right the trial court's order granting defendant, Pioneer State Mutual Insurance Company, summary disposition under MCR 2.116(C)(10).[1] Because there are no genuine issues of material fact, we affirm.

## I. BASIC FACTS

In mid-January 2015, Shultz was riding in a vehicle driven by her daughter, Ashley Shultz, when the vehicle was struck from behind by another automobile. Both Schultz and her daughter contend that they sustained bodily injuries as a result of the accident. Shultz made a claim for replacement services and attendant-care services under her no-fault policy with Pioneer. Pioneer, however, refused to pay, asserting that the claims for replacement services and attendant-care services were fraudulent. As a result, Pioneer argued it was entitled to void the insurance policy pursuant to a fraud-exclusion clause in Shultz's no-fault policy.

---

[1] Plaintiff, Ashley Shultz's, claims against Pioneer were settled in April 2017 and are not at issue in this appeal.

-1-

Pioneer moved for summary disposition on that basis, supporting its motion with deposition testimony and copies of the timesheets that purportedly showed when the services were provided and who provided the services. Pioneer argued that the deposition testimony conclusively showed that the information on the timesheets—which were signed by Shultz—was false. However, the trial court denied the motion, finding that Pioneer failed to establish that Shultz's no-fault policy included a fraud-exclusion clause. Pioneer moved for reconsideration. Attached to the motion was a copy of Shultz's no-fault policy, which includes the following fraud-exclusion clause:

> The entire policy will be void if, in obtaining or maintaining this policy, or whether before or after a loss, you, an "insured", a "family member" or any other person seeking coverage has:
>
> 1. Intentionally concealed or misrepresented any material fact or circumstance;
>
> 2. Engaged in fraudulent conduct; or
>
> 3. Made false statements;
>
> relating to this insurance.

Based on the no-fault policy, the trial court granted reconsideration. Thereafter, the court found that there was no genuine issue of material fact with regard to whether Shultz committed fraud. Accordingly, applying the holding from *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420; 864 NW2d 609 (2014), the court summarily dismissed Shultz's claims. Shultz moved for reconsideration or rehearing, contending that the evidence submitted showed (1) that there was no fraud in connection with the attendant-care services and replacement services, or (2) if there was fraud it was committed by ABA Home Care, LLC, the services provider, not Shultz. The court denied her motion.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Shultz argues that the trial court erred by granting Pioneer summary disposition. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). A motion for summary disposition under MCR 2.116(C)(10) "tests the factual support for a claim and should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 280; 807 NW2d 407 (2011). The trial court must consider affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties when deciding the motion. MCR 2.116(G)(4) and (5). "All documentary evidence submitted by the parties is considered in the light most favorable to the nonmoving party." *Stenzel v Best Buy Co*, 318 Mich App 411, 415; 898 NW2d 236 (2016), superseded in part on other grounds 320 Mich App 262 (2017). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party."

-2-

*Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). The reviewing court may not make factual findings on disputed factual issues and may not make credibility determinations. *Burkhardt v Bailey*, 260 Mich App 636, 647; 680 NW2d 453 (2004).

## B. ANALYSIS

Shultz first argues that there is a material question of fact with regard to whether there was fraud in connection with the attendant-care services and the replacement services. Generally whether or not an individual committed fraud is a question of fact for the jury, see *Shelton v Auto-Owners*, 318 Mich App 648, 658-660; 899 NW2d 744 (2017). However, summary disposition is appropriate if there is no genuine issue of material fact regarding an insured's fraud, *Bahri*, 308 Mich App at 426.

> To void a policy because the insured has wilfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. A statement is material if it is reasonably relevant to the insurer's investigation of a claim. [*Id*. at 424-425 (quotation marks and citation omitted).]

It is undisputed that based on timesheets bearing Shultz's signature, ABA Home Care, LLC, submitted invoices for combined attendant- and replacement-care services for January 2015, February 2015, and March 2015. The invoices stated that Shultz received 78 hours of attendant- and replacement-care services in January, 168 hours in February, and 188 hours in March. Pioneer argues that the invoices and the timesheets are fraudulent, so the fraud-exclusion clause in Shultz's no-fault policy allows it to void the entire policy. Shultz, however, argues that there is a genuine issue of material fact with regard to whether she committed fraud, so summary disposition is not appropriate under MCR 2.116(C)(10).

There are three sets of timesheets. Collectively, they indicate that every day from January 19, 2015 until March 31, 2015, Shultz received six hours of combined attendant- and replacement-care services from either Nicoll Fuller or Victoria Hariton. Again, it is undisputed that Shultz signed each timesheet and that the timesheets were used to generate the invoices submitted to Pioneer.

The January and February timesheets reflect that the caregiver was Fuller.[2]  Fuller testified that she believed she was doing "six hours a day" for Shultz.  However, she also testified that in the morning she helped *Shultz's daughter* get ready for school by making sure she had breakfast, helping her shower every morning for about 40 minutes, and driving her to school.[3]  She explained that when she came back, she would work for Shultz.  Specifically, she stated that from 12:00 p.m. until 2:00 p.m. she would do "all sorts of things," including "house stuff," taking the dog "wherever it needed to go," doing grocery shopping, and doing anything that Shultz or her daughter "would need at home."  When asked if she did personal stuff for Shultz, she testified:

> I did do a little bit of personal stuff.  I did kind of both.  If she needed help getting dressed or, you know, putting her hair up or this and that.  I did have a personal relationship with her, so I wouldn't just turn away if she did need the help.

When asked how often she did "personal" stuff, she testified that it was done "[i]ntermittently," and "[n]ot every day" because it was "just more the house stuff for her."  Fuller estimated that the personal care was about two hours a week for Shultz.

Here, although the bulk of Fuller's testimony suggests that she provided care to both Shultz and her daughter, and did not exclusively provide care to Shultz, a jury could nevertheless credit her testimony that she provided six hours of care to Shultz per day, which is what was claimed on the invoices submitted.  Thus, with regard to January 2015 and February 2015, there is a genuine issue of material fact with regard to whether the hours represented on the invoices were correctly stated.  See *Burkhardt*, 260 Mich App at 647 (stating when reviewing a motion for summary disposition motion a court should not make credibility decisions).

The March 2015 invoice and related timesheets are a different matter.  There are three timesheets: one for the 9:00 a.m. to 11:00 a.m. timeframe, one for the 11:00 a.m. to 1:00 p.m. timeframe, and one for the 8:00 p.m. to 10:00 p.m. timeframe.  According to the timesheets, Victoria Hariton was the caregiver from 9:00 a.m. until 1:00 p.m.  Hariton, however, testified that in March 2015 she only had one assignment from ABA, which was to care for a different woman.  She stated that before she received notice that she was a witness in the present case, she had never heard of Shultz and had never provided her with "any services."  Further, she testified that it was neither her signature nor her handwriting on the timesheets bearing her name.  When

---

[2] Fuller testified that Shultz was engaged to her father.  She testified that she became involved in the case the night of the accident, when she went to the hospital and learned that Shultz and her daughter were going to need care.  She stated that Shultz asked her to provide the care, and she agreed, went to ABA, filled out paperwork, interviewed, took a "quiz" and started working a day or two later.  Shultz testified that she did not know if Fuller started working for ABA before the accident.  Shultz's daughter testified that she knew Fuller before she started providing services, and when asked how she knew her she stated that she thought it was one of her mother's friends.

[3] Shultz also testified that Fuller assisted both of them when she was at their home, but her daughter only testified about the services that she received from ABA "caregivers."

shown the timesheets with Hariton's name on it, Shultz was asked "who is that person that was helping you, what's her name," and she responded "Victoria." When asked who "Victoria" was, Shultz responded that "Victoria" worked for the ABA and was not someone that she knew from before the accident. She never testified that "Victoria," i.e., Hariton, did not provide her with care or that the timesheets were incorrect.

On appeal, Shultz argues that Hariton's name appeared on the timesheet because Kristina Kurlyandchik, ABA's owner, placed it there. When asked about Hariton's name on the timesheets, Kurlyandchik testified:

> It was a mistake that I made, because when we receive the timesheet from—when we receive this timesheet in the office, it didn't have any name on it—and when we first received Rachel Shultz as our client, how we usually do, we usually call our workers, our contractors asking who would take this case. And first of our candidates was Victoria that was on the timesheet, but she never replied and we never got an answer from her. And then we got another person who agreed to take this case . . . .

Based on this testimony, a jury could infer that the timesheet was turned in without a caregiver name, so Kurlyandchik added a name based on who she thought was providing the services. That does not, however, establish that the services were actually provided, which is what Shultz's signature represents on the timesheets.

Furthermore, on this record, Fuller is the only other person identified who could have provided the services that Shultz represented by her signature were, in fact, provided.[4] We acknowledge that the record allows for a reasonable inference that Fuller did perform some services in March 2015. Specifically, the timesheet for the 8:00 p.m. to 10:00 p.m. timeframe has Fuller's name on it, and Fuller testified that even though ABA stopped paying her, she continued to assist Shultz's daughter in March 2015.

However, Fuller expressly disavowed having provided services from 11:00 a.m. until 1:00 p.m. in March 2015. She explained that her name and signature did not appear on that timesheet, and she stated that because ABA did not pay her she "decided not to continue working." There is no evidence whatsoever that, contrary to her testimony, Fuller provided services for Shultz from 11:00 a.m. until 1:00 p.m. On appeal, Shultz suggests that Fuller's testimony that she provided six hours of care per day to Shultz creates a genuine issue of material fact for all three months of care. However, that statement does not contain a timeframe, i.e., it does not state whether the daily care extended from January 2015 until the end of March 2015. Thus, Fuller's testimony only allows for a reasonable inference that for some days she

---

[4] We note that Shultz signed each timesheet multiple times. For instance, on the March 2015 timesheet for the 11:00 a.m. to 1:00 p.m. timeframe, Shultz signed individually for each day. Thus, her signature appears on that timesheet 31 times, and repeatedly asserts that she received two hours of care from "Victoria" between 11:00 a.m. and 1:00 p.m. every single day in March 2015.

provided six hours of care per day to Shultz, but in March 2015—given that she decided to discontinue working and expressly stated that she was not working from 11:00 a.m. to 1:00 p.m.—Fuller provided less than six hours of care.

In sum, even viewing the record in the light most favorable to Shultz, it is uncontroverted that Hariton did not provide Shultz with any services in March 2015 and Fuller did not any provide services from 11:00 a.m. to 1:00 p.m. in March 2015. Thus, the March 2015 invoice submitted to Pioneer contained a material misrepresentation insofar as it represented that Shultz had received six hours of combined attendant- and replacement-care services. Accordingly, because Shultz can point to no evidence supporting that she actually received six hours of combine attendant- and replacement-care services in March 2015, she cannot establish a genuine issue of material fact so as to survive summary disposition under MCR 2.116(C)(10).

Shultz alternatively argues that if there is a material misrepresentation, it was made by ABA, not by her. As a result, she argues that ABA committed fraud, not her, and ABA's fraud should not be attributed to her. However, as the source of the misrepresentation came from the invoices *signed* by Shultz, we are unprepared to release her from responsibility simply because she lied to ABA, and, believing her lies, ABA, submitted invoices containing a material misrepresentation to Pioneer. An insured may not avoid the consequences of his or her fraudulent statements by making them through an intermediary.

Affirmed. Pioneer may tax costs as the prevailing party. MCR 7.219(A).

/s/ Jane M. Beckering
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien

-6-