*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

OAKLAWN HOSPITAL,

        Plaintiff-Appellant,

v

AUTO-OWNERS INSURANCE COMPANY and
HOME-OWNERS INSURANCE COMPANY,

        Defendants-Appellees.

UNPUBLISHED
July 30, 2019

No. 343189
Calhoun Circuit Court
LC No. 17-001283-NF

Before: O'BRIEN, P.J., and FORT HOOD and CAMERON, JJ.

PER CURIAM.

Plaintiff appeals as of right from the trial court's order granting summary disposition in favor of defendants in this action in which plaintiff, a medical provider, seeks payment of personal protection insurance (PIP) benefits pursuant to the no-fault act, MCL 500.3101 *et seq*. We affirm.

## I. BACKGROUND

Plaintiff filed its complaint in this case on May 8, 2017. Plaintiff alleged that defendants'[1] insured, Daniel Dothsuk, was injured in a motor vehicle collision on October 2, 2004. Plaintiff further alleged that it provided professional medical services to Dothsuk during various dates in 2016 and 2017, and its charges for providing such services amounted to

---

[1] While both Auto-Owners Insurance Company and Home-Owners Insurance Company are named as parties in this case, in its brief on appeal plaintiff states that Auto-Owners is the responsible no-fault insurer in this case, and defendants throughout their brief on appeal also refer only to Auto-Owners as the responsible party. In their renewed motion for summary disposition, defendants submitted a no-fault policy issued by defendant Auto-Owners. For purposes of clarity of analysis, we will refer to defendants in the plural, unless it is necessary to refer individually to defendant Auto-Owners.

$489,209.98. After requesting that defendants pay for these medically necessary services rendered to Dothsuk, defendants refused. Alleging a claim under Michigan's no-fault act "and the applicable insurance contract," plaintiff sought payment of PIP benefits. In lieu of filing an answer, on June 12, 2017, defendants moved for summary disposition under MCR 2.116(C)(8), arguing that plaintiff did not have an independent cause of action against defendants under the no-fault act in light of the Michigan Supreme Court's decision in *Covenant Med Ctr v State Farm Mut Aut Ins Co*, 500 Mich 191; 895 NW2d 490 (2017). The parties then engaged in discovery.

Plaintiff subsequently filed a motion seeking leave to amend its complaint on September 18, 2017. In its brief in support, plaintiff acknowledged that post-*Covenant*, it did not have a statutory cause of action against defendants under the no-fault act. However, plaintiff alleged that Dothsuk assigned to plaintiff the right to pursue no-fault benefits against defendants under the applicable no-fault policy. In support of its motion, plaintiff included a document entitled "Consent Upon Admission to Oaklawn Hospital for Medical Treatment" signed by Dothsuk on June 23, 2016.[2]

Plaintiff also requested leave to amend its complaint to allege that defendants breached a contract with Preferred Provider Organization of Michigan (PPOM), now known as Cofinity, to which defendants were parties. On the same date, plaintiff filed a response to defendants' motion for summary disposition, acknowledging that following *Covenant*, it could not proceed with a direct action against defendants under the no-fault act. However, plaintiff urged the trial court to grant its motion seeking leave to amend its complaint to allege claims arising from Dothsuk's assignment to plaintiff, as well as claims arising from the applicable Cofinity contracts. During a hearing held on September 25, 2017, the trial court granted plaintiff's motion to amend its complaint and stated that defendants' motion for summary disposition would be held in abeyance. On October 4, 2017, the trial court entered an order granting plaintiff's motion for leave to amend its complaint and holding defendants' motion for summary disposition in abeyance.

Plaintiff filed its seven-count first amended complaint on October 12, 2017, alleging one count seeking payment of PIP benefits under the no-fault act, two counts proceeding under an assignment theory, three counts alleging breach of contract and a count seeking declaratory relief pursuant to MCR 2.605. On February 2, 2018, defendants filed a renewed motion for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10). Defendants argued that because *Covenant* clearly held that medical providers could not pursue an independent cause of action against a no-fault insurance company under the no-fault act, the counts in the first amended complaint that sought an independent cause of action against defendants should be dismissed. Defendants also contended that the consent for treatment forms that Dothsuk signed were not valid assignments authorizing plaintiff to receive payment from defendants for medical services rendered to Dothsuk.

---

[2] Plaintiff also included identical forms signed by Dothsuk dated December 2, 2016, January 13, 2017, January 24, 2017, February 7, 2017, and February 16, 2017.

Defendants also pointed out that even if the trial court were to accept plaintiff's assertion that the consent to treatment forms were assignments, MCL 500.3143 prohibits assignments of rights to no-fault benefits payable in the future. Defendants also asserted that the alleged assignments were invalid because the no-fault insurance policy expressly prohibited the assignment of benefits without the consent of the no-fault insurer. According to defendants, the alleged assignments were also invalid because Michigan law does not allow for the splitting of a single cause of action into multiple causes of action. Finally, defendants maintained that plaintiff's reliance on the Cofinity contracts to pursue a cause of action against defendants was unsuccessful because the documents set forth the rates that plaintiff could charge for medical services, but did not guarantee payment, and the no-fault insurer reserved the right to determine if benefits should be paid pursuant to the no-fault policy.

Plaintiff filed its response opposing defendants' motion for summary disposition on February 21, 2018. In its brief in support, plaintiff maintained that because several counts in the first amended complaint were grounded in contract, rather than the no-fault act, defendants' attempt to portray these claims as no-fault statutory claims was without merit. Plaintiff also pointed out that defendants' motion for summary disposition was premature because defendants had not yet produced the Cofinity contracts at issue in spite of discovery requests concerning the contracts. Plaintiff argued that full review of the Cofinity contracts was necessary because several of the counts in the first amended complaint alleged breach of the contracts and an additional count alleged that plaintiff was a third-party beneficiary of the contracts. Plaintiff went on to contend that the trial court could not grant summary disposition on the basis of the existing record without the Cofinity contracts because the express language of the contracts required defendants to tender payment for Dothsuk's medical treatment.

Plaintiff also argued that the counts in the first amended complaint based on an assignment theory should not be dismissed because Dothsuk executed valid assignments in favor of plaintiff allowing it to recover no-fault benefits from defendant. Plaintiff also argued that MCL 500.3143 did not preclude plaintiff's recovery of no-fault benefits because Dothsuk incurred the charges for his medical services when he signed the assignments, and therefore the benefits were not for "benefits payable in the future[.]" Citing *Roger Williams Ins Co v Carrington*, 43 Mich 252, 253-254; 5 NW 303 (1880), plaintiff also asserted that the anti-assignment clause in the no-fault policy did not prevent Dothsuk from assigning his claims to plaintiff because "an anti-assignment clause in an insurance policy does not prevent the insured from assigning the insured's cause of action against the insurer after a loss has occurred." Finally, plaintiff countered defendant's argument that the rule against splitting a cause of action was violated in this case, given that the rule does not prohibit an insured from assigning his interest in no-fault benefits as Dothsuk did in the instant case.

Following a hearing on defendants' renewed motion for summary disposition, during which defense counsel informed the trial court that a direct contract between Cofinity and Auto-Owners did not exist, the trial court granted defendants' motion. Plaintiff now appeals as of right.

## II. STANDARD OF REVIEW

This Court reviews the trial court's decision in response to a motion for summary disposition de novo. *Richardson v Allstate Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 341439); slip op at 2. Defendants moved for summary disposition under MCR 2.116(C)(8) and (10). The trial court's bench ruling and its resulting order do not indicate under which subrule of MCR 2.116(C) the trial court granted summary disposition. However, because the trial court considered material beyond the pleadings, this Court will consider the motion as having been granted pursuant to MCR 2.116(C)(10). *Hughes v Region VII Area Agency on Aging*, 277 Mich App 268, 273; 744 NW2d 10 (2007).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4). *Quinto v Cross & Peters Co*, 451 Mich 358; 547 NW2d 314 (1996). [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).]

## III. ANALYSIS

## A. INTRODUCTION

In *Covenant*, our Supreme Court held that "[a] thorough review of the statutory no-fault scheme reveals no support for an independent action by a healthcare provider against a no-fault insurer." *Covenant*, 500 Mich at 195. Our Supreme Court elaborated, "no . . . provision of the no-fault act can reasonably be construed as bestowing on a healthcare provider a statutory right to directly sue no-fault insurers for recovery of no-fault benefits." *Id*. at 196. The Supreme Court did state that healthcare providers could still pursue alternate courses of action for recovery of services provided to a no-fault insurer's insured. Put another way, the conclusion that a healthcare provider does not have a statutory right under the no-fault act to directly pursue an action against a no-fault insurer for recovery of no-fault benefits "does not mean that a healthcare provider is without recourse; a provider that furnishes healthcare services to a person for injuries sustained in a motor vehicle accident may seek payment from the injured person for the provider's reasonable charges." *Id*. at 217.

> See *Miller v Citizens Ins Co*, 490 Mich 905; 804 NW2d 740 (2011). Moreover, our conclusion today is not intended to alter an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider. See MCL 500.3143; *Professional Rehab Assoc v State Farm Mut Auto Ins Co*, 228 Mich App 167, 172; 577 NW2d 909 (1998) (noting that only the assignment of future benefits is prohibited by MCL 500.3143). [*Covenant*, 500 Mich at 217 n 40.]

After our Supreme Court decided *Covenant*, this Court concluded that *Covenant* applied retroactively to that case, under circumstances in which the plaintiff's complaint was filed on September 3, 2015, and *Covenant* was decided May 25, 2017, after the plaintiff appealed to this

Court. *W A Foote Mem Hosp v Mich Assigned Claims Plan*, 321 Mich App 159, 165, 167-168, 196; 909 NW2d 38 (2017).[3]

### B. THE ANTI-ASSIGNMENT CLAUSE IN THE NO-FAULT POLICY

In their brief on appeal, defendants acknowledge that they argued in the trial court that Dothsuk was precluded from assigning his rights to recover no-fault benefits to plaintiff under the terms of the applicable no-fault policy. However, defendants concede that this Court has decided that an antiassignment clause in a no-fault insurance policy is unenforceable because it violates Michigan public policy. *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 200; 920 NW2d 148 (2018).[4] Plaintiff echoes this argument in its brief on appeal. However, defendants maintain that *Shah* was incorrectly decided. In *Shah*, this Court, citing *Roger Williams*, recognized that "an accrued cause of action may be freely assigned after the loss and that an antiassignment clause is not enforceable to restrict such an assignment because such a clause violates public policy in that situation." *Shah*, 324 Mich App at 199, 200. The no-fault policy in this case issued by Auto-Owners provides that "[no] assignment of interest under this policy shall bind the Company until its consent is endorsed hereon[.]" Accordingly, given this Court's recent pronouncement in *Shah*, defendants' argument that Dothsuk could not assign his right to recover benefits under the no-fault policy to plaintiff is without merit.

### III. DID DOTHSUK CLEARLY ASSIGN HIS RIGHT TO PAYMENT OF NO-FAULT BENEFITS IN THE CONSENT FOR TREATMENT FORMS?

On appeal, plaintiff contends that the trial court erred in granting summary disposition in favor of defendants on the basis of the conclusion that Dothsuk had not executed a valid assignment. Plaintiff, quoting *Burkhardt v Bailey*, 260 Mich App 636, 654-655; 680 NW2d 453 (2004), emphasizes that a written instrument, even if not artfully drafted, will create a valid assignment if it reflects the assignor's intention to "presently transfer 'the thing' to the assignee." As this Court recognized in *Burkhardt*, "[t]here is little case law in this state regarding what elements are necessary to create an assignment." *Id*. at 654.

> In *Weston v Dowty*, 163 Mich App 238, 242; 414 NW2d 165 (1987), this Court opined "there must be a perfected transaction between the parties which is intended to vest in the assignee a present right in the thing assigned." Further,

---

[3] The Michigan Supreme Court has scheduled oral argument on whether to grant the plaintiff hospital's application for leave to appeal to the Michigan Supreme Court and has directed the parties to brief the issue whether *Covenant* applies to that case. *W A Foote Mem Hosp v Mich Assigned Claims Plan*, 501 Mich 1079 (2018).

[4] The Michigan Supreme Court has scheduled oral argument on the defendant's application for leave to appeal and directed the parties to brief the issue "whether the anti-assignment clause in the defendant's insurance policy precludes the defendant's insured from assigning his right to recover no-fault personal protection insurance benefits to the plaintiff healthcare providers." *Shah, MD, PC v State Farm Mut Auto Ins Co*, 503 Mich 882 (2018).

Michigan's version of the statute of frauds requires that an assignment of "things in action" be "in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise . . . ." MCL 566.132(1)(f). Thus, under Michigan law, a written instrument, even if poorly drafted, creates an assignment if it clearly reflects the intent of the assignor to presently transfer "the thing" to the assignee. *Hovey v Grand Trunk W R Co*, 135 Mich 147, 149; 97 NW 398 (1903). [*Burkhardt*, 260 Mich App at 654-655 (footnote omitted).]

In the present case, the consent to treatment forms provide, in pertinent part:

> **Authorization to Release Information, Assignment of Interest and Payment Agreement**. I authorize the release of information about me to other health care providers, agencies, and health-related entities that Oaklawn determines necessary for my health care. *I request and authorize payment directly to Oaklawn of benefits otherwise payable to me, such as Medicare benefits, for all services rendered to me or on my behalf, especially services by an Oaklawn employed physician.* For any physician services provided by non-Oaklawn employed physicians I understand I will be billed directly by those physicians and owe them separately for their services. I assume financial responsibility to Oaklawn and I understand that any amounts collected at the time of service are an estimate only and that I will be billed for any balance remaining which will be due in full within 30 days of receipt of the statement unless other arrangements are made with Patient Financial Services. [Emphasis added.]

In our view, the consent to treatment form, even though in pertinent part captioned "Assignment of Interest[,]" and stating Dothsuk's intention that payment of benefits *be paid directly* to Oaklawn, does not demonstrate that Dothsuk intended that plaintiff would be assigned the right to pursue recovery of no-fault benefits directly against defendants. Rather, the language in the consent for treatment form reflects that Dothsuk intended to allow that insurance payments be made directly to plaintiff. Moreover, the language at issue is also factually distinguishable from that of the assignment in *Henry Ford Health Sys v Everest Nat'l Ins Co*, 326 Mich App 398, ___; ___ NW2d ___ (2018); slip op at 1, app held in abeyance, ___ Mich ___ (2019) (Docket No. 158904)[5] which provided:

> This is an assignment of the right to enforce payment of charges incurred only for Services arising out of the July 30, 2016 accident, for which charges are payable under any policy of insurance, contract and/or statute. Such assignment shall include, in Assignee's sole discretion, the right to pursue appeal of a payment denial under any procedure outlined in any insurance policy, contract or statute and/or the right to file a lawsuit to enforce the payment of benefits due or past due for these Services incurred and resulting charges.

---

[5] The Michigan Supreme Court's order provides that the defendant's application for leave to appeal is held in abeyance pending the Supreme Court's decision in *Shah*.

In any event, even if this Court were to construe the assignment in the manner plaintiff advocates, plaintiff faces another hurdle with respect to MCL 500.3143.

### IV. DOES THE ASSIGNMENT AT ISSUE COMPLY WITH MCL 500.3143?

On appeal, plaintiff challenges the application of MCL 500.3143 to this case, arguing that Dothsuk's assignments were not assignments of future benefits, but instead were "assignments of presently due benefits" because Dothsuk incurred the costs of his medical services when he signed the consent to treatment forms. As a preliminary matter, MCL 500.3143 provides that "[a]n agreement for assignment of a right to benefits payable in the future is void." In *Covenant*, our Supreme Court recognized that questions of statutory interpretation are reviewed de novo. *Covenant*, 500 Mich at 199.

> The role of [appellate courts] in interpreting statutory language is to ascertain the legislative intent that may reasonably be inferred from the words in a statute. The focus of our analysis must be the statute's express language, which offers the most reliable evidence of the Legislature's intent. When the statutory language is clear and unambiguous, judicial construction is not permitted and the statute is enforced as written. [A] court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. [*Id*. (citations and quotation marks omitted).]

This Court recently recognized that the text of MCL 500.3143 is "unambiguous and prohibits only assignments of benefits payable in the future, as opposed to a right to payment of past or presently due benefits." *Henry Ford Health Sys*, 326 Mich App at ___; slip op at 6. In support of its argument that the no-fault benefits at issue were not "payable in the future" as contemplated by MCL 500.3143, plaintiff points to MCL 500.3142(1), another provision of the no-fault act, which provides that "[p]ersonal protection insurance benefits are payable as loss accrues." Plaintiff also cites in support of its position MCL 500.3110(4), which states that "[p]ersonal protection insurance benefits payable for accidental bodily injury accrue not when the injury occurs but as the allowable expense, work loss or survivors' loss is incurred."

Plaintiff also points to our Supreme Court's decision in *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 478, 483; 673 NW2d 739 (2003), in which the Court reviewed the propriety of an award of no-fault benefits after the plaintiff was injured in a motor vehicle collision. In *Proudfoot*, our Supreme Court held that the defendant no-fault insurer was not liable to pay for future home modification expenses to the plaintiff's home because they had not yet been incurred. *Id*. at 483. In so ruling, the *Proudfoot* Court cited MCL 500.3107(1)(a)[6] and MCL

---

[6] MCL 500.3107(1)(a) provides, in pertinent part:

> Except as provided in subsection (2), personal protection insurance benefits are payable for the following:

500.3110(4),[7] and turning to the dictionary definition of the word "incur" as used in both statutes, stated that it means "[t]o become liable or subject to, [especially] because of one's own actions." *Proudfoot*, 469 Mich at 484, citing *Webster's II New College Dictionary* (2001). In *Proudfoot*, the plaintiff, at the time of the applicable judgment, had not taken action to become liable for the costs of the future home modifications at issue. *Proudfoot*, 469 Mich at 484. The *Proudfoot* Court emphasized that if a trial court entered a declaratory judgment providing that an expense was necessary and allowable, a no-fault insurer is still not required to pay the expense until it is actually incurred. *Id*. at 484. By way of footnote, the *Proudfoot* Court also stated that "[a]n insured could be liable for costs by various means, including paying for costs out of pocket or signing a contract for products or services." *Id*. at 484 n 4.

Plaintiff also cites an unpublished opinion[8] of this Court in *Guthrie v Auto-Owners Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued July 25, 2017 (Docket No. 332199). In *Guthrie*, the defendant no-fault insurance company argued that the trial court erred in concluding that the plaintiff had incurred expenses allowable under the no-fault act when she signed an estimate from a contractor hired to do work on her home for the estimated cost of $289,000. *Id*. at 2. In discerning whether the plaintiff was entitled to attorney fees and interest under the no-fault act, this Court observed that "the claimant must be entitled to the claimed benefits before receiving either attorney fees or penalty interest." *Id*. at 3. This Court turned to published authority, *Hamilton v AAA Mich*, 248 Mich App 535, 543; 639 NW2d 837 (2001) construing MCL 500.3107(1)(a), and quoted the following portion of this Court's opinion:

> In order for a no-fault insurer to be responsible for a particular expense, three requirements must be satisfied: (1) the expense must have been incurred by the insured, (2) the expense must have been for a product, service, or accommodation reasonably necessary for the injured person's care, recovery, or rehabilitation, and (3) the amount of the expense must have been reasonable. [*Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 49-50; 457 NW2d 637 (1990)]; *Booth v Auto–Owners Ins Co*, 224 Mich App 724, 727; 569 NW2d 903 (1997). Where a plaintiff has failed to meet the burden of showing that a particular expense has been incurred for a reasonably necessary product or service, "there can be no finding of a breach of

---

[7] MCL 500.3110(4) addresses the accrual of no-fault benefits and provides:

> Personal protection insurance benefits payable for accidental bodily injury accrue not when the injury occurs but as the allowable expense, work loss or survivors' loss is incurred.

Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation.

[8] We acknowledge that unpublished opinions from this Court are not precedentially binding. MCR 7.215(C)(1).

the insurer's duty to pay that expense, and thus no finding of liability with regard to that expense." *Nasser, supra* at 50. [*Guthrie*, unpub op at 3.]

As the defendant no-fault insurer argued that the plaintiff had not incurred any expense for the renovation of her home, this Court in *Guthrie* also looked to our Supreme Court's dictionary definition of "incur" and held that under circumstances in which the plaintiff and the contractor had both signed the estimate, "the document demonstrate[d] [the contractor's] intent to extend an offer to perform the construction project[,]" it was an "executed contract" that obligated the contractor to renovate the plaintiff's home, and the expense was incurred as contemplated by MCL 500.3107(1)(a). *Guthrie*, unpub op at 4.

Drawing from this Court's analysis in *Guthrie*, plaintiff asserts that "Dothsuk incurred [plaintiff's] charges [for medical services] when he signed the consent-to-treat forms at intake because that is when he became legally responsible to pay for the services that were provided to him on the relevant date of service." In our opinion, *Proudfoot* and *Guthrie* are not supportive of plaintiff's argument because they are both legally and factually distinguishable. From a factual standpoint these cases are not on all fours with the present case because they involved situations in which the insured was having modifications done to their home following a motor vehicle accident, and did not implicate the provision of medical services to the insured by a medical provider, such as what is at issue here. Moreover, as a legal matter, both involved an interpretation of MCL 500.3107(1)(a), not MCL 500.3143. This distinction is significant, because MCL 500.3107(1)(a) speaks to "[a]llowable *expenses*" being incurred, while MCL 500.3143 addresses the assignment "of a right to *benefits* payable in the future[.]" As noted earlier in this opinion, MCL 500.3110(4) states that "[p]ersonal protection insurance *benefits* payable for accidental bodily injury accrue not when the injury occurs, but *as the allowable expense . . . is incurred.*" (Emphasis added.) Additionally, MCL 500.3142(1) states that "[p]ersonal protection insurance benefits are payable as loss accrues." (Emphasis added.) See also *Farm Bureau Gen Ins Co v Blue Cross Blue Shield of Mich*, 314 Mich App 12, 22; 884 NW2d 853 (2015) (stating that pursuant to MCL 500.3107(1)(a) "[w]hen an insured has no legal responsibility for disputed medical costs, those expenses are not 'incurred' by the insured within the meaning of MCL 500.3107(1)(a)); *Karmol v Encompass Property & Cas Co*, 293 Mich App 382, 389; 809 NW2d 631 (2011) (recognizing that pursuant to MCL 500.3110(4), PIP benefits accrue when the allowable expense is incurred); *Allard v State Farm Ins Co*, 271 Mich App 394, 400; 722 NW2d 268 (2006) (observing that until an expense is incurred as set forth in MCL 500.3110(4) and MCL 500.3107(1) "the insured's entitlement to benefits does not accrue and the insurer's ability to pay the claim does not attach."); *Bombalski v Auto Club Ins Ass'n*, 247 Mich App 536, 543; 637 NW2d 251 (2001) (under circumstances in which the insured did not bear liability for his medical service charges, he had not incurred the charges as contemplated by MCL 500.3107(1)).

When Dothsuk signed the consent for treatment forms, he had not yet *incurred* allowable expenses for his medical treatment, at that point he was merely requesting and providing consent to in fact receive medical treatment as a general matter. Notably, the consent for treatment form provides that Dothsuck was "request[ing] and consent[ing] to health care provided by [plaintiff], its physicians, and health care providers." The consent to treatment form also specified that health care could include "examinations, diagnostic procedures and treatment considered appropriate by my attending physician(s) or other health care providers at Oaklawn." The

consent for treatment form also specified that Dothsuk reserved the right to refuse any medical treatment, and that "unless an emergency or extraordinary circumstances" arose, "no substantial procedures will be performed upon me" unless Dothsuk had discussed the proposed treatment, to his personal satisfaction, with his physician or other appropriate health care providers. Accordingly, when he signed the consent to treatment forms, while Dothsuk requested that plaintiff provide medical treatment and he consented to health care being provided by plaintiff, PIP benefits had not accrued because allowable expenses had not yet been incurred. MCL 500.3110(4). Under such circumstances, the trial court correctly granted summary disposition in favor of defendants, because even if the consent for treatment forms were construed to be valid assignments, they contravened the prohibition against the assignment of future benefits set forth in MCL 500.3143. See *Professional Rehab Ass*, 228 Mich App at 173) (recognizing that under MCL 500.3143, "[t]o the extent that the assignment can be read as assigning future benefits, that part of [an] assignment is void as a matter of law.")

## V. ARE THE PURPORTED ASSIGNMENTS UNENFORCEABLE BECAUSE THEY RESULT IN THE SPLITTING OF A CAUSE OF ACTION

On appeal, defendants point out that in the trial court, they argued that, to the extent the consent for treatment forms allegedly assigned Dothsuk's ability to recover no-fault benefits, they violated Michigan's common-law rule that precludes the splitting of a cause of action. In its brief on appeal, plaintiff counters this argument. Defendants also acknowledge that this Court has rejected its argument in *Henry Ford Health Sys*, but defendants "contend[ ] that [*Henry Ford Health Sys* was] incorrectly decided."

In *Henry Ford Health Sys*, this Court rejected the defendant no-fault insurer's argument that the subject assignment was unenforceable because it did not assign the insured's entire cause of action. *Henry Ford Health Sys*, 326 Mich App at ___; slip op at 5-6. Specifically, the *Henry Ford Health Sys* Court noted that MCR 2.205 had replaced Michigan's common-law rule precluding the splitting of causes of action. *Henry Ford Health Sys*, 326 Mich App at ___; slip op at 5. This Court observed that the no-fault act "contemplates and requires a multitude of performances" in the form of payment to an insured, and that reliance on case law from the Michigan Supreme Court, which involved facts under which the defendant was required to make a single commission payment to a third party, and the plaintiff sought to enforce an assignment of only a portion of that payment, was not persuasive. *Id*. at ___; slip op at 5. This Court also recognized that if it were to hold that the assignment at issue was an "unenforceable partial assignment, it would effectively render the insured's right to assign a claim for past or presently due benefits meaningless." *Id*. at ___; slip op at 6. Accordingly, in light of this Court's recent decision in *Henry Ford Health Sys*, defendants' arguments that the purported assignments are unenforceable because they violated the common-law rule against claim splitting are unavailing.

## VI. PLAINTIFF'S CONTRACTUAL THEORIES OF RECOVERY

Counts V, VI, and VII of the first amended complaint are based on plaintiff's allegation that defendants have breached a contractual obligation to pay for Dothsuk's medical services as required by contracts that defendants entered into with PPOM, also known as Cofinity. As relevant to Count V, plaintiff alleged that it entered into a contractual agreement with PPOM/Cofinity on January 1, 1998, an agreement that was amended on several occasions,

including on December 1, 2004 and April 1, 2008. As a general matter, the contract between plaintiff and Cofinity provides that auto insurers paying medical benefits are to pay 80% of the fees that plaintiff charges.

Plaintiff also alleged that defendants entered into a separate contract with PPOM/Cofinity, and that they possess a copy of that contract. Plaintiff also alleged that PPOM/Cofinity assigned to plaintiff its contractual rights to enforce payment against defendants. Count VI of the first amended complaint alleged a breach of the PPOM/Cofinity contract under a third-party beneficiary theory. Specifically, plaintiff alleged that it was an "intended third-party beneficiary" of the contract between defendants and PPOM/Cofinity. Count VII of the first amended complaint alleged that "[b]ecause the Oaklawn-Cofinity Contract and the Insurer-Cofinity Contract refer to each other, they form one tripartite contract." On appeal, plaintiff concedes that defendants never actually had a *direct* contractual relationship with Cofinity, but rather, defendants had a contract with a separate company, CorVel, who in turn had an agreement with Cofinity. Although this was not alleged by plaintiff below, and although the alleged contract between defendants and CorVel was not requested as part of plaintiff's motion to compel, plaintiff now contends that it is this contract that might support its recovery under a third-party beneficiary theory, and that the trial court prematurely granted defendants summary disposition without requiring defendants to produce the contract.

In support of its response to defendants' renewed motion for summary disposition, plaintiff included the PHO Agreement between PPOM and Physician Hospital Organization of Battle Creek, dated January 1, 1998, which defined a "health plan" in the following manner:[9]

> Any self-funded health benefit plan, or group or individual health care insurance policy, worker's compensation policy, auto insurance policy, or other indemnity plan under which an Insurer provides specific health benefits for a Patient.

The PHO Agreement also states, in pertinent part, with respect to the definition of an insurer:

> "INSURER" shall mean any self-insured group, employee welfare benefit plan, insurance company, including but not limited to worker's compensation insurers and auto insurers or other third party payor which pursuant to a contract between PPOM and such third party payor has agreed to pay PHO providers for services covered by its Health Plan provided to patients.

---

[9] This Court reviews contractual language to discern its ordinary and plain meaning. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003). "Issues involving the proper interpretation of . . . contracts are . . . reviewed de novo." *Henry Ford Health Sys*, 326 Mich App at ___; slip op at 2.

Notably, Section 4 of the Agreement, captioned PHO Provider Services, provides, in pertinent part:

A. PHO Providers shall provide appropriate and/or medically necessary Services to every Patient, Provided, however, that in all situations other than emergency situations, where a PHO Provider seeks to admit a Patient as an inpatient for Hospital Services (hereinafter referred to an "Elective Admission"), that prior to admitting such Patient, Hospital shall call PPOM for an admission number. However, it is expressly acknowledged and agreed that by providing such admission number to Hospital, PPOM is not acting in any capacity whatsoever to determine the medical necessity or propriety of the requested Elective Admissions; nor shall the provision of, or failure to provide, said admission number by PPOM be deemed and/or construed as approval of, and/or consent to, and/or denial, objection, or disapproval of, the medical necessity or propriety of the requested Elective Admission. *Further, neither the obtaining of an admission number, nor the failure to so obtain such admission number, shall be determinative of whether or not the services provided are properly reimbursable under a Patient's Health Plan; such determination shall be made by the Insurer in accordance with the coverage provisions of said Health Plan.*

B. PHO Provider shall contact the applicable Insurer (or its third party administrator, if any) to determine the eligibility status and extent of coverage of any prospective Patient. [Emphasis added.]

Section 8 of the Agreement further provides, in pertinent part:

Notwithstanding anything contained herein to the contrary, PPOM shall not be liable and/or responsible for:

A. Any failure of any Insurer to pay any submitted claim and/or billing. *However, PPOM agrees to assign to PHO and/or PHO Providers where applicable any contractual rights to enforce payment which it may have against such Insurer.* [Emphasis added.]

Section 11 of the PHO Agreement regarding "Payment for Services" provides, in pertinent part:

A. PHO Providers hereby agree to accept as payment in full for all Services rendered

\* \* \*

(a) Hospital's usual and customary charges for such services reduced by twenty (20%) percent:

\* \* \*

-12-

4. PHO Providers shall be entitled to recover from the applicable Insurer, for Services which are covered under a Patient's Health Plan, the amount determined hereinabove less any coinsurance or deductible specified in such Patient's Health Plan[.]

      B. PHO Providers hereby acknowledge and agree that PPOM shall not be liable for payment of any charges for Services, rather, PPOM shall only be obligated to use its best efforts to obtain payment from any Insurer in an amount equal to that amount which PHO Providers *are entitled to receive* from such Insurer as set forth hereinabove. [Emphasis added.]

Plaintiff also included the Fourth Amendment to the Physician Hospital Organization Agreement between PPOM and Physician Hospital Organization of Battle Creek dated April 1, 2008, which provided, in pertinent part, that "[h]ospital outpatient services shall be reimbursed at eight (80%) percent of the hospitals' billed charge. The Second Amendment to PHO Agreement dated December 4, 2008, stated, in pertinent part that "[t]he parties agree that Oaklawn Hospital shall participate under the terms of this PHO Agreement as a PHO Provider[.]"

The thrust of plaintiff's argument on appeal that the trial court erred in granting summary disposition with respect to its contractual theories of recovery arise from its contentions that (1) the contract between plaintiff and Cofinity expressly provided that plaintiff is "entitled" to recover from defendants the amount that plaintiff charged for medical services to Dothsuk at a discounted rate and (2) summary disposition was prematurely granted before discovery was completed because plaintiff was attempting to secure a copy of the contract between defendants and CorVel. According to plaintiff, its claims "necessarily require examination of the terms of the contract" between defendants and CorVel because plaintiff is seeking recovery under the contract as a third-party beneficiary and the contract between plaintiff and Cofinity establishes that plaintiff can pursue recovery directly against defendants.

However, as an initial matter, a review of the contractual language in the Agreement between plaintiff and Cofinity simply does not support plaintiff's assertion. Instead, the contractual language clearly reserves to the insurer, in this case Auto-Owners, the determination whether the charges incurred for medical services will be reimbursed pursuant to the terms of the no-fault insurance policy. The trial court, which was presented with a copy of the Agreement between plaintiff and Cofinity, had an opportunity to review the contractual language and while it did not expressly cite Section 4(A) of the agreement, it likely recognized that the Agreement between Cofinity and plaintiff did not provide plaintiff with a contractual theory of recovery and therefore would have concluded that the contract between defendants and Cofinity would also not have permitted plaintiff to recover under a contractual theory. Of course, we now know that no direct contract between defendants and Cofinity exists, but the same logic would apply to a rate-setting contract between defendants and CorVel. Under such circumstances, the trial court reasonably concluded that additional time to conduct discovery to allow plaintiff to secure a copy of the alleged agreement would not have been beneficial to plaintiff. While this Court has observed that a motion for summary disposition is prematurely granted before discovery on contested issues has been completed, the trial court may nonetheless grant summary disposition "if further discovery does not stand a reasonable chance of uncovering factual support for the opposing party's position." *Bodnar v St John Providence, Inc*, ___ Mich App ___, ___; ___

-13-

NW2d ___ (2019) (Docket No. 337615); slip op at 13, lv pending. Accordingly, summary disposition of plaintiff's contractual claims against defendants was appropriate.

## IV. CONCLUSION

The trial court's order granting summary disposition in favor of defendants is affirmed. Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Colleen A. O'Brien
/s/ Karen M. Fort Hood
/s/ Thomas C. Cameron